J. Wilson Lepine, a sugar planter, claims of Cecil B. Pettepher, $291.77, alleged to be the balance due on the purchase price of certain secondhand sheet steel and tank bottoms formerly used in Lepine's sugar factory and sold to Pettepher as scrap. Defendant admits having purchased an undisclosed quantity of scrap material, but he not only avers that he paid for it in full, but he claims that Lepine is indebted to him in the sum of $197.96.
There was judgment for plaintiff as prayed for and defendant has appealed.
Plaintiff has answered the appeal asserting that it was taken only for delay and is frivolous, and he has asked that the amount of the judgment be increased by 10%.
The record shows that Lepine agreed to sell and Pettepher agreed to buy certain steel and tank bottoms at 2 1/2¢ per pound to be delivered to Pettepher at the plantation, and that payment was to be made in cash, and that railroad weights were to be used to determine the total amount of material sold. It also is clear that inasmuch as it could not be determined in advance just what the total weight would be, Pettepher paid on account $1,000, with the understanding that should the total weight make an additional payment necessary, he would pay the balance and that should it develop that the amount paid was more than required, Lepine would refund accordingly. It is also shown that later defendant paid on account an additional amount of $200.
Lepine claims that the total purchase price should have been $1,572.07, but he admits that Pettepher is due credit not only for the two cash payments totalling $1,200, but also for $80.30, representing the cost of cutting up the material and preparing it for delivery for which he was responsible, but which Pettepher undertook to do. Thus, according to Lepine, the account between them stands as follows:
Price of material at 2 1/2¢ per pound ........ $1,572.07 Credit due Pettepher for cutting up and preparing material for shipment ........... $ 80.30 Cash paid on account ............ $1,200.00 _________ Total credit .................... $1,280.30 $1,280.30 _________ Balance due ..................................... $ 291.77
Though in his answer Pettepher averred that he had paid in full for all material taken, and that in addition there was due to him a balance on his reconventional demand, he admitted on the witness stand that the material bought and delivered would, at 2 1/2¢ per pound, cost $1,572.07. Note the following in his testimony:
"Q. That amount is what we recite in our petition as the total amount of material we sold Mr. Pettepher, $1572.07, so, on that amount there is no dispute between you and Mr. Lepine? A. None whatever."
Thus his averment that he had paid in full for the material is shown by his own statement to have been false. Now, though admitting that the total amount which originally was due by him was $1,572.07, he claims that he is entitled to an offset amounting to $197.96 made up of $108.20, representing the cost of dismantling the tanks and preparing the material for shipment, and $89.06 as the loss sustained by him in having to acquire "I" beams at a higher price in order to comply with a contract which he had made to deliver "I" beams to someone else.
The record shows beyond any possible doubt that the credit of $80.30, already allowed Pettepher by Lepine, represents the correct cost of dismantling and cutting up the tanks and getting the material ready for shipment. So that Pettepher is not entitled to any other amount on that item. His own letters show the correct unit prices for the labor, acetylene and oxygen used and his own testimony evidences carelessness in his statement of facts in discussing these items.
This leaves only his claim that Lepine refused to deliver the "I" beams though he had agreed to sell them, and though Pettepher had contracted to sell them to someone else. There is not one word in the record, except Pettepher's own testimony, which indicates that Lepine agreed to sell these "I" beams, and this is denied by Lepine and also by Lepine's manager. And Pettepher himself admits that when he wrote Lepine, stating that he would take the "I" beams, he "* * * received no reply." His testimony that he had sold these beams to someone else, and that he bought others to replace them, is not convincing. After some hesitation, he stated that he had sold the beams to Taylor Manufacturing Co. of Macon, Georgia. But he could not produce any documentary proof of that sale, stating that he hadn't it with him. His testimony *Page 704 
as to the price at which he had purchased the other beams is not helpful to his contention. The amount claimed on his reconventional demand on this item indicates that the other beams were bought at 4 1/2¢ per pound, and yet in his testimony, though he said that he had bought beams from Marx Bros., he added: "I don't recall what I paid for them. * * *" Still later, he said that he thought he had paid Marx Bros. at the rate of 4¢ per pound, but a few minutes afterwards, he admitted "I may have" bought beams from Marx Bros. at 3¢ per pound.
The record convinces us that the judgment below is correct and that this appeal was taken for no other purpose than to obtain delay.
It is therefore ordered, adjudged and decreed that the judgment appealed from be, and it is, amended by the increase thereof by 10%, and that as thus amended it be affirmed at the cost of appellant.
Amended and affirmed.